IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

VISION BANK,                          :
                                      :
    Plaintiff,                        :
                                      :
VS.                                   : CIVIL ACTION NO. 10-00543-CG-B
                                      :
DYNAMIC AIR, INC., *et al.*,          :
                                      :
    Defendants.                       :

**REPORT AND RECOMMENDATION**

This case is before the Court on Defendants Dynamic Air, Inc., Stanley Knighton, and Susan Knightons' Motion to Dismiss for Lack of Jurisdiction (Doc. 23). The motion has been referred to the undersigned Magistrate Judge for entry of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of Defendants' motion, Plaintiff's response in opposition (Doc. 25), Defendants' reply (Doc. 27), and the case file, the undersigned RECOMMENDS that Defendants motion be DENIED.

**I. Background**

On October 5, 2010, Plaintiff, Vision Bank filed the instant action against Dynamic Air, Inc., Stanley Knighton, and Susan Knighton for breach of a promissory note. (Doc. 1). Plaintiff asserts that the Court has subject matter jurisdiction

1

over the action pursuant to 28 U.S.C. § 1332. (Id. at 2). Specifically, Plaintiff asserts that Vision Bank is a Florida corporation, with its principal place of business in Panama City, FL; that Defendant Dynamic Air, Inc. is an Alabama Corporation, with its principal place of business in Orange Beach, AL; that Stanley and Susan Knighton are individual citizens and residents of Alabama; and that the amount in controversy against each Defendant exceeds the sum of Seventy-Five Thousand Dollars. (Id. at 1-2).

On December 14, 2010, Defendants filed the Motion to Dismiss challenging the Court's subject matter jurisdiction pursuant to Rule 12(b)(1) of the <u>Federal Rules of Civil Procedure</u>. Defendants argue that 1) Vision Bank is a citizen of the State of Alabama because it was incorporated in the State of Alabama, and 2)Vision Bank is a citizen of the State of Alabama because its principal place of business is in Alabama. (Doc. 23). Thus, diversity of citizenship is lacking. Plaintiff, on the other hand, argues that Vision Bank is incorporated in Florida, and is headquartered in Florida; thus, is properly deemed a citizen of Florida.

**II. Discussion**

 **A. <u>Legal Standard</u>**

Under Fed.R.Civ.P. 12(b)(1), dismissal is appropriate if the Court does not have subject matter jurisdiction over the

matter. A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be treated as either a factual or facial challenge to the complaint. See McElmurray v. Consol. Gov't of Augusta-Richmond County, 501 F.3d 1244, 1251 (11th Cir. 2007). In a facial challenge, the plaintiff has safeguards similar to those in place in a Rule 12(b)(6) motion to dismiss. In other words, the court accepts the plaintiff's factual allegations as true and merely looks to see if the plaintiff has alleged subject matter jurisdiction in the pleadings. See Id. Factual attacks challenge the existence of subject matter jurisdiction in fact, regardless of the pleadings. Where there is a factual challenge, matters outside the pleadings such as affidavits and testimony may also be considered. See Id. (citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th. Cir. 1990)). "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002); See also, Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005).

Subject-matter jurisdiction in federal court can be based upon either federal question jurisdiction pursuant to 28 U.S.C. § 1331, or diversity jurisdiction, pursuant to 28 U.S.C. § 1332. 28 U.S.C. § 1332 (a) provides that "district courts have original jurisdiction of all civil actions where the matter in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States. . . ." Under § 1332, a corporation is "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005) (citing 28 U.S.C. § 1332 (c)(1)); see also MacGinnitie v. Hobbs Group, LLC, 420 F.3d 1234, 1239 (11th Cir. 2005)("For diversity purposes, a corporation is a citizen of both the state where it is incorporated and the state where it has its principal place of business.").

Defendants do not dispute that the amount in controversy in this action exceeds the sum of $75,000. Defendants instead argue that complete diversity of citizenship does not exist. Defendants raise a factual challenge with respect to Plaintiff's citizenship. Defendants argue that Plaintiff Vision Bank was incorporated in Alabama, and that its principal place of business is in Alabama; thus, for purposes of diversity jurisdiction, it is a citizen of Alabama, as opposed to Florida.

Plaintiff, on the other hand, argues that it is a Florida Corporation. Plaintiff contends and Defendant does not dispute that Vision Bank is a wholly owned subsidiary of Park National Corporation ("Park"), a multi-bank holding company headquartered in Newark, Ohio, which acquired Vision Bank in March of 2007.

4

(Doc. 23, Ex. F). At the time of acquisition, Vision Bank operated two bank subsidiaries, Vision Bank of Alabama, incorporated in Alabama and headquartered in Gulf Shores, AL, and Vision Bank of Florida, incorporated in Florida and headquartered in Panama City, FL. (Id.) On July 20, 2007, Vision Bank of Alabama was merged into Vision Bank of Florida (Id.). As a result of the merger, Vision Bank's charter in the state of Alabama was withdrawn and rescinded, and Vision Bank was registered as a foreign corporation in Alabama. (Id., Ex. A). Vision Bank currently operates under a Florida charter and has 18 branch locations throughout the Florida panhandle and Baldwin County, AL. (Id., Ex. F). Vision Bank's headquarters is listed as 2200 Stanford Road, Panama City, FL 32045 in the corporate charter and all corporate documentation filed with the Alabama and Florida Secretary of State. (Doc. 25, Ginn Aff. at ¶15; Doc. 27-1; Doc. 27-2).[1]

According to Plaintiff, Vision Bank currently continues to operate through two banking divisions, one in Florida and one in Baldwin County, AL; and while each division has an advisory Board of Directors, Vision Bank maintains one official governing

---

[1] Defendant attached a number of exhibits including pages from Park National Corporation's 2009 Annual Report and Vision Bank's "Business Entity Details" as listed on the Alabama Secretary of State's website, which support plaintiff's contentions as to the merger. See (Doc 23., Ex. A, F).

Board of Directors based in Panama City, FL. (Doc. 25, Ginn Aff., ¶ 6). The official governing board meets regularly in Panama City, FL, and all of Vision Bank's policies and procedures are approved and disseminated from there. (Id. at ¶9, 11). In addition, Panama City is the location where all of Vision Bank's corporate books and records are kept, where Vision Bank's quarterly call reports are reviewed and approved for filing with the FDIC, and where all audits are conducted. (Id. at ¶ 13, 16).

### B. Vision Bank is incorporated in Florida.

While Defendants contend that Vision Bank retains citizenship in Alabama because it was once incorporated in the state, the undersigned finds otherwise. The relevant time frame for determining diversity jurisdiction is the facts as they existed when the complaint was filed. Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570, 124 S. Ct. 1920, 1924, 158 L. Ed. 2d 866 (2004)("It has long been the case that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.")(citing Mollan v. Torrance, 22 U.S. 537, 9 Wheat. 537, 539, 6 L. Ed. 154 (1824)). At the time of filing, "a corporation shall be deemed a citizen of any State *by which it has been incorporated* and of the State where it has its principal place of business. . . ." 28 U.S.C. § 1332(c)(1)(emphasis added).

Additionally, where there is a merger of corporations, for purposes of establishing diversity jurisdiction, corporate citizenship is determined based on the citizenship of the surviving corporation of a merger[2]. See TKI, Inc. v. Nichols Research Corp., 191 F. Supp. 2d 1307, 1318 (M.D. Ala. 2002)("Citizenship of a merged corporation is determined by the principal place of business of the survivor corporation); El Chico Restaurants, Inc. v. Aetna Cas. & Sur. Co., 980 F. Supp. 1474, 1482 (S.D. Ga. 1997)("When one corporation is merged into another the citizenship of the survivor corporation governs for diversity purposes."); Foster v. American Gen. Life Ins. Co., 1994 U.S. Dist. LEXIS 18890 (S.D. Ala. Nov. 9, 1994), *11 ("[W]here there has been a merger of corporate defendants, federal courts have considered the corporate citizenship of the

---

[2] Some courts considering this issue have also looked to the laws of the state of incorporation to determine the effect of merger on diversity of citizenship. See First Family Fin. Servs. v. Bradford, 2001 U.S. Dist. LEXIS 23963, *9, n.3 (S.D. Miss. Aug. 23, 2001). It is clear under both Alabama and Florida merger law, that when two corporations merge only the surviving corporation continues to exist. See Ala. Code § 10A-2-11.06 (1975)("When a merger takes effect . . . [e]very other corporation party to the merger merges into the surviving corporation and the separate existence of every corporation except the surviving corporation ceases[]"); Florida Statute § 607.1106 ("When a merger becomes effective . . . [e]very other corporation party to the merger merges into the surviving corporation and the separate existence of every corporation except the surviving corporation ceases").

7

surviving corporation as the relevant citizenship for diversity purposes as of the time the lawsuit was filed."); See also, Hoefferle Truck Sales, Inc. v. Divco-Wayne Corp., 523 F.2d 543, 548-49 (7th Cir. 1975)( "[T]he proposition that separate corporations lose their separate identity after merger is too evident for much discussion.").

In this case, Plaintiff has established that in 2007, "Vision Bank of Alabama" merged with "Vision Bank of Florida", and they became "Vision Bank"[3]. Vision Bank of Alabama ceased to exist. Its charter was rescinded, and Vision Bank registered with the State of Alabama as a foreign corporation. Accordingly, the undersigned finds that where there has been a merger, for purposes of diversity jurisdiction, the state of incorporation of the surviving entity, in this case, Vision Bank, determines citizenship[4]. In this instance, at the time this

---

[3] Defendants have alleged no defects in the merger process, and in fact, the 2007 Vision Bank merger has been previously examined by the Court and it was determined that Florida is the proper state of incorporation for Vision Bank. Vision Bank v. Swindall, 2009 U.S. Dist. LEXIS 105177, *7 (S.D. Ala. Nov. 10, 2009) (finding Vision had complied with the Alabama requirements for merger and that diversity existed because Vision is incorporated in Florida, with its principal place of business in Panama City, FL).

[4] The undersigned declines to follow the Bollea v. Wells Fargo Insurance Services Southeast, Inc., 2010 U.S. Dist. LEXIS 83296 (M.D. Fla. July 22, 2010) decision as urged by Defendants. (Doc. 23 at 1, ¶4). Bollea appears to have involved a corporation that became inactive after merger, as opposed to one
(Continued)

8

lawsuit was filed on October 5, 2010, Vision Bank was incorporated in the State of Florida; thus, Plaintiff Vision Bank is deemed to be a citizen of Florida, the state of its incorporation.

### C. **Vision Bank's principal place of business is Panama City, FL.**

Defendants argue that Vision Bank's "principal place of business" is in Alabama, and accordingly complete diversity does not exist. (Doc. 23 at 3). However, their assertion is not borne out by the record. The United States Supreme Court has made clear that for purposes of diversity jurisdiction, a corporation's principal place of business is the "nerve center" or "the place where a corporation's high level officers direct,

---

such as Vision Bank of Alabama, which was extinguished by the merger. Further, the undersigned finds persuasive that line of federal cases which hold that where there has been a merger of corporate defendants, the corporate citizenship of the surviving corporation is deemed the relevant citizenship for diversity purposes as of the time the lawsuit was filed. Cottrell v. Bendix Corp., 1990 U.S. App. LEXIS 17345, * 1, n.1 (6th Cir. Sept. 28, 1990) (per curiam); Foster v. American Gen. Life Ins. Co., 1994 U.S. Dist. LEXIS 18890 (S.D. Ala. Nov. 9, 1994). See also, Meadows v. Bicrodyne Corp., 785 F.2d 670, 671-71 (9th Cir. 1986)(affirming the district court's denial of remand motion where corporation surviving merger was a diverse citizen); Wilkins v. Wachovia Corp., 2011 U.S. Dist. LEXIS 31060, *10 (E.D. N.C. Feb. 28, 2011) ("[w]hen a civil action is filed after a merger takes place, the surviving entity's domicile is determinative of jurisdiction"); In Re Yasmin and Yaz Mktg., 692 F. Supp. 2d 1025, 1028 n.1 (S.D. Ill. 2010).

control, and coordinate the corporation's activities." Hertz Corp. v. Friend, 130 S. Ct. 1181, 1186, 1192, 175 L. Ed. 2d 1029 (2010). That "nerve center" will normally be "the place where the corporation maintains its headquarters- provided that the headquarters is the actual center of direction, control, and coordination… and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." Id. at 1192.

In adopting the "nerve center" approach, "[t]he State in which the corporation has its most extensive contacts or business dealings or the greatest impact on the public is irrelevant to [the] determination." Greystone Bank v. Tavarez, 2010 U.S. Dist. LEXIS 92397, *2 (E.D. N.Y. June 10, 2010)(citing Hertz, 130 S. Ct. at 1191-92, 1194). Rather in the interest of "administrative simplicity," the nerve center approach is designed to point Courts toward a single place within a state that constitutes the corporate "brain" of the company. Hertz, 130 S. Ct. at 1193. "The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it." Id. at 1194 (citing Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d. 391 (1994); McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936)).

The undersigned finds that the declaration of plaintiff's Chairman of the governing Board of Directors and Chief Executive Officer, Joey W. Ginn, which was submitted in support of its response in opposition to Defendant's Motion to Dismiss, establishes by preponderance of the evidence that plaintiff's "nerve center" and principal place of business is Panama City, Florida. Thus, complete diversity exists. See Shawnee Terminal R.R. Co. v. J.E. Estes Wood Co., 2010 U.S. Dist. LEXIS 132941, *7-8 (S.D. Ala. Nov. 23, 2010)(applying the Hertz standard and finding affidavits of a Corporation's president to support diversity despite being "somewhat conclusory [in] nature"); Greystone Bank v. Tavarez, 2010 U.S. Dist. LEXIS 92397, *3 (E.D. N.Y. June 10, 2010)(establishing corporate citizenship by the declaration of a corporation's Vice President); Monica v. Accurate Lift Truck, 2010 U.S. Dist. LEXIS 40480, at *4-5 (E.D. Pa. Apr. 20, 2010) [*4] (applying the standard articulated in Hertz and finding that the declaration of a corporation's Vice President asserting that an office in New Jersey constituted the corporation's principal place of business established competent proof of jurisdictional facts); Brooks-McCollum v. State Farm Ins. Co., 376 Fed. Appx. 217, 2010 U.S. App. LEXIS 8135, at *5-6 (3d Cir. Apr. 20, 2010) (establishing corporate citizenship by affidavit alone); Laufen Int'l, Inc. v. Larry J. Lint Floor & Wall Covering, Co., 2010 U.S. Dist. LEXIS 35049, at *9 (W.D. Pa.

Apr. 9, 2010) (establishing corporate citizenship by affidavit alone).

As discussed supra, the record establishes that Vision Bank was incorporated solely in Florida when the complaint was filed. Vision Bank's charter and other corporate documents identify 2200 Stanford Road, Panama City, Florida 32045 as the company's corporate headquarters and principal place of business. (Doc. 25, Ginn Aff. at ¶15; Doc. 27-1; Doc. 27-2). Panama City is the location where the legal governing Board of Directors meets and policies and procedures for the corporation are approved and disseminated to the various branches. (Doc. 25, Ginn Aff. at ¶ 8,9). Additionally, Panama City is where: 1)quarterly call reports are reviewed and approved for filing; 2)official books and records are kept and maintained, including the Bank's Charter and organizational documents; 3)personnel files are kept and maintained; 4) payrolls are approved, and 5) audits are conducted. (Doc. 25, Ginn Aff. at ¶¶ 9-14).

While Defendants allege that Vision Bank through its promotional materials, website, and legal correspondence has continued to hold itself out as an Alabama banking corporation, and lists 39 officers in Alabama versus 36 in Florida (36)[5], and

---

[5] Vision Bank's website as Defendants correctly point out lists 39 "Officers" in Alabama, compared with 36 in Florida. (See Doc. 23, Exhibit H). However, Vision Bank's Florida 2010
(Continued)

thus should be considered a citizen of Alabama for diversity purposes (Doc. 23 at 4; Doc. 27 at 1-2), the undersigned does not find the arguments persuasive in light of the Hertz decision.

For purposes of determining a corporation's principal place of business, the Supreme Court has made it clear that under the nerve center test "[t]he State in which the corporation has its most extensive contacts or business dealings or the greatest impact on the public is irrelevant . . . ." Greystone Bank, 2010 U.S. Dist. LEXIS 92397 at *2 (citing Hertz, 130 S. Ct. at 1191-92, 1194); See also, Shawnee Terminal R.R. Co. v. J.E. Estes Wood Co., 2010 U.S. Dist. LEXIS 132941, *5 (S.D. Ala. Nov. 23, 2010) ("The Hertz decision adopted a version of the "nerve center" test to the exclusion of the other standards."); Bartram, LLC v. C.B. Contrs., LLC, 2010 U.S. Dist. LEXIS 92008, *5, n. 1 (N.D. Fla. Aug. 10, 2010). Accordingly, Defendant's arguments regarding Vision Bank's holding itself out as an Alabama corporation, emphasizing extensive business contacts and close ties with the community in Alabama via their website or

---

For Profit Corporation Annual Report lists 6 "Officers and Directors," of those 6, 4 reside in Florida. (See Doc. 27-1). Needless to say, it is not entirely clear how many Executive Officers Vision Bank has who actually participate in control of the bank, and what percentage of those reside in Florida.

promotional materials are immaterial to determining corporate citizenship.[6]

Additionally, in adopting the nerve center test, the Supreme Court rejected the idea that a corporation would have two different principal places of business as other courts have previously found. Hertz Corp., 130 S. Ct. at 1193("[A] corporation's 'nerve center,' usually its main headquarters, is a single place [within a state]."); See also, Century Business Servs., Inc. v. Bryant, 69 Fed. Appx. 306, 313 (6th Cir. 2003)(("[A] corporation can have only one principal place of business for purposes of establishing its state of citizenship"); Metropolitan Life Ins. Co. v. Estate of Cammon, 929 F.2d 1220, 1223 (7th Cir. 1991) ( "[A]ll agree that corporations have *one* 'principal' place of business for purposes

---

[6] Defendants rely heavily on the argument that Vision Bank should be counted as an Alabama corporation because they have held themselves out as such to the public through their website, and to Defendants in demand letters sent by "Vision Bank, an Alabama Corporation". (Doc. 27 at 1-2; Doc. 23 at 4). However, Defendants have not cited any authority supporting the relevance of that argument other than general notions concerning the purpose of the diversity statute. The Court's own review of authority indicates that such misleading information on the part of Vision Bank, while not commendable, is not dispositive for the purposes of diversity. See Hertz Corp., 130 S. Ct. at 1042 ("The public often (though not always)considers [the nerve center] the corporation's main place of business") ; See also, Prather v. Williams Prod. RMT Co., 2010 U.S. Dist. LEXIS 136432 (D. Colo. Dec. 1, 2010)(Finding that VP's affidavit established Oklahoma as nerve center under Hertz despite letterhead listing the corporate address as Colorado).

of 28 U.S.C. § 1332(c)(1)"); Bailey v. Grand Trunk Lines New England, 805 F.2d 1097, 1100 (2nd Cir. 1986)("[T]he overwhelming consensus of authority [is] that a corporation may have only one principal place of business") (addressing 28 U.S.C. § 1603(b), which incorporated § 1332(c)). As a result, in this case, the Defendant's only cognizable argument is that despite Panama City, FL being Vision Bank's undisputed corporate headquarters, Alabama is Vision Bank's actual principal place of business.[7]

According to the Supreme Court, in most cases, a company's corporate headquarters will also be its "nerve center" provided that the address listed as the corporate headquarters is the actual center of direction and control. As noted *supra*, Plaintiffs have provided competent evidence that Panama City, Florida is indeed Vision Bank's "nerve center" through the affidavit of Vision Bank CEO, Joey Ginn. Defendants have not argued that Panama City, Florida is not the official corporate headquarters or that Panama City is a sham headquarters and is not where the actual direction, control or coordination of the company takes place. They have also conceded that Panama City was Vision Bank of Florida's headquarters at the time Vision Bank of Alabama merged into Vision Bank of Florida. (Doc. 27 at

---

[7] Various corporate records attached as exhibits by Defendants list Panama City as the main office and/or principal place of business.(See Doc. 27-1, 27-2, 27-3).

15

2). Notwithstanding, Defendants would have this court find that Alabama is a superior principal place of business based on the image Vision Bank presents to the public, and the fact that some Executives and board members reside in Alabama. (Doc. 27 at 3). However, such an argument simply does not comport with the Supreme Court's decision in Hertz.

The Supreme Court expressly rejected a "general business activities" test, which would measure among other things, the amount of business conducted in various locations and the public's perception, in favor of a test that would be easy to apply. Hertz Corp., 130 S. Ct. at 1192- 93. The Court recognized that in some cases, "corporations may divide their command and coordinating functions among officers who work at several different locations," but nonetheless Courts should be pointed in a single direction "towards the center of overall direction, control, and coordination." Hertz Corp., 130 S.Ct. at 1194; See also, Compass Bank v. Villarreal, 2010 U.S. Dist. LEXIS 36041, *5 (S.D. Texas, April 10, 2010)("Although nearly half of Compass Bank's high-level officers appear to live and work in Texas", court concluded that the Birmingham, Alabama headquarters remained the 'actual center of direction, control, and

coordination' of its activities).[8] The record before the Court demonstrates that Panama City is the corporate headquarters for Vision Bank, the location at which all major decisions and policies are approved and disseminated, payroll is handled, and all official corporate records are maintained. (Doc. 25, Ginn Aff. at 3). The Court thus finds that while it appears that Vision Bank continues to have a significant presence in the state of Alabama, Panama City, Florida is the "actual center of direction and control." Accordingly, the Court concludes that Vision Bank is a citizen of Florida for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

For the foregoing reasons, the undersigned recommends that the Court DENY Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 23)[9].

---

[8] The Seventh Circuit, which already applied the nerve center test, prior to the Hertz decision considers the following non-exhaustive factors when a corporation's principal place of business is not easily ascertainable: 1) where important decisions are located; 2) where the corporation's general counsel, directors, officers and shareholders are located; 3) where the corporation is funded; and 4) where the corporation's primary bank account exists. Lambs Farm Int'l, Inc. v. Northern Ins. Co., 2003 U.S. Dist. LEXIS 1699 (N.D. Ill. Feb. 5, 2003). While the Ginn affidavit does not provide information on all of these factors, they also tend to point to Panama City as Vision Bank's principal place of business.

[9] Defendant has alternatively requested an evidentiary hearing and/or a chance to conduct additional discovery to establish further jurisdictional facts. (Doc. 27 at 3). However, the undersigned finds that the record is adequate to
(Continued)

The attached sheet contains important information regarding objections to this Report and Recommendation.

**DONE** this **30th** day of **March, 2011**.

                                       <u>/s/ SONJA F. BIVINS</u>
                             **UNITED STATES MAGISTRATE JUDGE**

---

resolve this motion. This is particularly true given the stream-lined approach established under <u>Hertz.</u>

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1.  *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[10] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a

---

[10] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).

19

brief in support of the objection may be deemed
an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. ***Transcript (applicable Where Proceedings Tape Recorded).*** Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.